# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

Argelia Solito,

                    Plaintiff,

                                Case No. 1:23-cv-3438-MLB

v.

Sam's East Inc.,

                    Defendant.

_____/

## ORDER

This is a foreign substance slip-and-fall case. Defendant Sam's East, Inc. moves for summary judgment. (Dkt. 23.) Plaintiff Argelia Solito responds. (Dkt. 29.) The Court **GRANTS IN PART** Sam's East's motion.

## I.    Local Rule 56.1(B)

Solito failed to comply with Local Rule 56.1(B) at several different levels. Under that rule, whenever a movant provides a statement of material facts, the Court deems the movant's facts admitted unless "the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence . . . ; (ii) states a valid objection

to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact," is immaterial, or otherwise noncompliant with Rule 56.1. *See* LR 56.1(B)(2)(a)(2), NDGa. When done, the response must include "individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts." LR 56.1(B)(2)(a)(1), NDGa. And should the respondent desire to include additional evidence, respondent must file "a statement of additional facts" in accordance with this rule. LR 56.1(B)(2)(b), NDGa. Compliance with this rule is "the only permissible way for [a respondent] to establish a genuine issue of material fact" at summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008).

Sam's East says Solito violated all these rules in its reply to its statement of facts and response to summary judgment. (Dkt. 31 at 1–2, 14–15.) The Court agrees. First, admitting to all but two of Sam's East's facts in a single sentence, she never "individually numbered" each response. (Dkt. 28.) Second, she disputes those two facts with a three-page narrative that seems to add facts and argue conclusions—like whether a person seen in a photo is an employee of Sam's East—rather

than citing evidence to challenge Sam's East's factual assertions. (*Id.* at 2–3.) Third, Solito's response brief cites almost 350 pages of exhibits to support her factual assertions without ever establishing those facts by filing a statement of additional facts as required. (*See* Dkt. 29-1.)

These failures are not technicalities. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). By not filing a separate pleading to assert these facts, Solito deprived Sam's East of its right to respond to the facts and evidence—a right protected by Local Rule 56.1(B)(3). *See* LR 56.1(B)(3), NDGa ("If respondent provides a statement of additional material facts, then, within the time allowed for filing a reply, the movant shall file a response to each of the respondent's facts."). That Sam's East could use space in its reply brief to respond to Solito's new allegations is not a meaningful remedy. Local Rule 56.1 also "protects judicial resources by making the parties organize the evidence rather than leaving the burden upon the district judge." *Reese*, 527 F.3d at 1268. The Court will not undertake the burdensome job of sifting unguided through the docket and voluminous submissions in a hunt for evidence that might support Solito's version of events. Consequently, the Court deems Sam's East's facts admitted and disregards her evidence cited only in her brief.

LR 56.1(B)(1), NDGa ("The court will not consider any fact: . . . (d) set out only in the brief and not in the movant's [or respondent's] statement of undisputed facts."); *Smith v. Mercer*, 572 F. App'x 676, 678 (11th Cir. 2014) ("A district court applying Local Rule 56.1 must disregard or ignore evidence relied on by the respondent—but not cited in its response to the movant's statement of undisputed facts—that yields facts contrary to those listed in the movant's statement.") (internal quotation marks omitted).[1]

This determination, of course, does not give Sam's East a free pass at summary judgment. The Court must still review whether the cited evidence in Sam East's statement of material facts supports the assertions. *Reese*, 527 F.3d at 1269 (Even if a non-movant fails to comply with Local Rule 56.1, courts must, "[a]t the least, . . . review all of the evidentiary materials submitted in support of the motion for summary judgment."). Then, it must determine whether Sam's East is entitled to

---

[1] The Court recognizes *Mercer* is unpublished and not binding. The Court cites it and other cases nevertheless as instructive. *See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive.").

judgment as a matter of law. *See Mann*, 588 F.3d at 1303 (holding such failures to comply with Local Rule 56.1 render the motion a "functional analog of an unopposed motion for summary judgment").

## II.    Background

In 2021, Solito visited a Sam's Club in Georgia a little after noon. (Dkts. 23-1 at 63; 24-1 at 29:21–25, 31:10–14.)  While Solito was shopping elsewhere in the store, a group of four unknown patrons with three shopping carts congregated at the end of a display in the bakery section. (Dkt. 23-2 ¶ 5.)  The group included a person in a red shirt, a person in a pink shirt, a person in a blue shirt, and a person in a gray shirt.  (*Id.*)  A store camera overhanging this section captured the person in red transferring items among the carts.  (*Id.* ¶ 6.)

At 12:20, the person in pink pointed to the cart closest to the display, prompting the person in red to look at something in the cart, pull a rectangular package from the cart, and look downward at the floor. (*Id.* ¶¶ 6–8.)  The person in red walked out of the camera's view and, after speaking with an unknown person several aisles away who was wearing a yellow vest, returned with another similarly shaped package. (Dkts. 23-2 ¶¶ 6–8; 25 (8/5/2021 Video) at 12:22:59 PM–12:23:17 PM.)

Less than a minute later, the person in red took something else out of one of the carts, carried it into the adjacent aisle, exchanged it for something else, walked back to the carts, and put the item in a cart. (Dkt. 25 (8/5/2021 Video) at 12:24:17 PM–12:24:45 PM.)   While the person in red was doing that, a Sam's East employee pushing a cart full of merchandise walked past the group.  (Dkts. 23-2 ¶ 9, 19; 25 (8/5/2021 Video) at 12:24:22 PM–12:24:28 PM.)  That person turned his or her head toward Elizabeth Billingsley (a Crossmark employee serving samples nearby), veered towards her, and waved to her while walking past.  (*Id.*)

Seconds later, Solito arrived at the bakery section.  (Dkt. 23-2 ¶ 10.) She walked up the aisle where the person in red had just exchanged the item.  (Dkt. 25 (8/5/2021 Video) at 12:24:49 PM.)   Unable to maneuver her cart around the group, Solito left her cart and walked around the group to reach an item on the other side of the table.  (Dkt. 23-2 ¶¶ 10–12.)  She walked the same path the person in red had walked just seconds before with the exchanged item.  (Dkt. 25 (8/5/2021 Video) at 12:25:05 PM–12:24:11 PM.)   The image below from the surveillance camera shows Solito, on the far left in a pinkish shirt, leaving her cart to maneuver around the group:



(Dkt. 25.)   As she rounded the group, Solito slipped and fell on an

unknown substance. (Dkt. 23-2 ¶ 13.)   The video does not show the

substance.  Solito never noticed the substance until she was on the floor.

(*Id.* ¶¶ 14–15.)  While on the floor, she touched the "spread out" substance

and believed it was oil.  (*Id.* ¶¶ 16, 18.)  Solito neither saw the source of

the substance, knew how long it had been on the floor, nor observed the

substance's color.   (*Id.* ¶ 17.)   At her deposition, Sam's East asked

whether anything in front of her "prevented" her from seeing the floor as

she was walking.  (Dkt. 26-1 at 32:10–12.)  Unable to recall much, Solito

answered, "No, just the ladies that were standing there.  So they were

standing there, and I just walked up, and I didn't imagine that that was

spilled down there."  (*Id.* at 32:20–23.)

Billingsley rushed to Solito. (Dkt. 23-2 ¶ 19.) Cody Speck (the General Manager) and Anthony Morreale (the Market Manager) approached Solito within seconds to help. (*Id.*) While kneeling at Solito's side, Speck glanced at the direction of the carts, suspecting the substance's source came from a leaky item in one of the nearby patron's carts. (Dkt. 23-2 ¶¶ 20–21.) He believes the substance on the floor was fuel for heating a chafing dish. (*Id.* ¶ 21.)

As depicted below, the person in pink placed items at two spots on the floor directly below where the patrons congregated their carts (presumably to mark off the area):



(Dkt. 25.)  A few minutes later, Billingsley picked those items up and cleaned the floor with some kind of spray cleaner.  (*Id.* at 12:27:21 PM–12:28:53 PM.)[2]

Sam's East maintains an inspection program.  As part of this, it requires employees to conduct regular safety sweeps, inspecting and monitoring the store for hazards.  (Dkts. 23-2 ¶ 26; 23-1 at 47 ¶ 10.) Sam's East also has a "Towel in Pocket Program" that obligates employees to carry with them an absorbent cloth while on duty. (Dkts. 23-2 ¶ 28; 23-1 at 59.)  Should an employee notice a hazard, he or she must immediately either clean the hazard or protect the area from others.  (Dkts. 23-1 at 47 ¶ 10; 23-2 ¶ 29.)  The day Solito fell, employees of Sam's East walked past the bakery section four times: thrice approximately thirty minutes before the group formed and once less than a minute before Solito fell.  (Dkt. 23-2 ¶ 30.)

---

[2] Sam's East included photographs of the floor with its statement of material facts.  (Dkts. 23-1 at 50–54; 23-2 ¶¶ 24-25.)  The images are not helpful in determining what the floor looked like when Solito fell because the video shows Billingsley cleaned the area *before* an employee took the photos.  (Dkt. 25 (8/5/2021 Video) at 12:27:21 PM–12:28:53 PM.)

Solito sued Sam's East, asserting several "claims," specifically: (1) *res ipsa loquitur*, (2) negligent maintenance, (3) vicarious liability, (4) negligent training and supervision, (5) negligence per se, (6) and "notice of intent to use documents." (Dkt. 1-2.)

## III. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing a court, by reference to materials in the record, that there is no genuine dispute as to any material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). The nonmoving party then has the burden of showing summary judgment is improper by coming forward with "specific facts" demonstrating a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Salinero v. Johnson & Johnson*, 995 F.3d 959, 964 (11th Cir. 2021).

## IV.  Discussion

Solito's complaint falls short of clarity, in part, because she alleges as "counts" many doctrines that are not independent rights of actions. "*Res Ipsa Loquitur*"—alleged in Count One—is a rule of evidence to allow an inference of negligence, *see Evans v. Heard*, 442 S.E.2d 753, 754 (Ga. 1994), and a "Notice of Intent to Use Certified Documents at Trial"—alleged in Count V—is a method of introducing business records, *see* Fed. R. Evid. 902.  Sam's East moves for summary judgment on all Solito's other claims.  In doing so, it addresses her claim for "negligence" as a premises liability claim.  (Dkt. 23-1 at 13.)  Solito responds in kind. (Dkt. 29 at 6.)  So the Court thus does the same.  Sam's East also moves for summary judgment on Solito's claims for negligent maintenance, negligence per se, vicarious liability, and negligent training and supervision.  (Dkt. 23-1 at 18–22.)  Solito did not respond to Sam's East's arguments on those causes of action other than a one-sentence argument that "those claims are dependent on the constructive knowledge of the [Sam's East] of the spill and the evidence raises issues pertaining to the notification of an employee of [Sam's East] regarding the leaking product, reasonableness of the inspection procedures, and the implementation of

the inspection program." (Dkt. 29 at 23.) The Court concludes Solito's failure to respond properly constitutes abandonment of her claims for negligence per se, negligent training and supervision, vicarious liability, and negligent *maintenance* claims (to the extent this allegation exists independently from the negligence claim). *See Burnette v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1140 (N.D. Ga. 2004) ("Failure to respond to the opposing party's summary judgment arguments regarding a claim constitutes an abandonment of that claim and warrants the entry of summary judgment for the opposing party."); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (Abandonment occurs when someone "either makes only passing references to [a claim] or raises it in a perfunctory manner without supporting arguments and authority.").

The Court thus addresses only Solito's premises liability claim. To prevail on her slip-and-fall claim for premises liability, Solito must prove "(1) that [Sam's East] had actual or constructive knowledge of the hazard; and (2) that [she] lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of [Sam's

East]." *Robinson v. Kroger Co.*, 493 S.E.2d 403, 414 (Ga. 1997). The parties only dispute the first element.

## A.    Actual Knowledge

Sam's East moves for summary judgment, arguing the evidence in the record—including Solito's deposition and discovery responses—provides no facts from which a jury could conclude it had actual knowledge of the spill before Solito fell. (Dkt. 23-1 at 14-15.) Solito disagrees.    (Dkt. 1-1 at 7.)    She argues the video evidence of the interaction between the person in the red shirt and the unknown person in a yellow vest imparted knowledge on Sam's East as to a spill. (Dkt. 29 at 9.)[3]  Specifically, she claims the footage shows the person in red speaking with an "employee" in a yellow vest about the leaky package many aisles away from the group, the person in red "making arm gestures pointing" in the direction from where the person in red had walked (that is, the area in which Solito fell), and these facts would permit a jury to conclude the person in red told the person in the vest

---

[3] She refers to this in her brief as "constructive knowledge" but discusses it as actual knowledge, saying it shows Sam's East's employes were told of the spill.  (Dkt. 29 at 9-11.)

about the spill.  (*Id.* at 9-11.)  Solito believes *Cross v. Dolgencorp, LLC*, 2018 WL 3949749 (N.D. Ga. May 21, 2018) supports this argument. (Dkt. 29 at 7–10.)

Not even close.  As Sam's East accurately points out, this entire argument rests on two assumptions unsupported by any evidence: (1) the person in the yellow vest was a Sam's East employee and (2) they discussed the spill.  (Dkt. 30 at 6.)  But the person in a yellow vest was dressed very differently from the people both parties agree were employees (who all wore a distinct dark navy vest with white lettering). Nothing about the blurry footage indicates the person worked at Sam's East.  *Prosper v. Martin*, 989 F.3d 1242, 1252–53 (11th Cir. 2021) ("A blurry video that does not depict much of anything cannot give rise to issues of fact about what did or did not happen on a particular occasion."). And regardless of that person's identity, Solito never produced any evidence showing the substance of their conversation.  So that contention fails.  Indeed, it's not even clear the person in red put the first package back *because* of the leak.  The leak could have originated from the second package he put back; after all, he carried that package through the exact pathway in which Solito fell just seconds before she fell.

14

Furthermore, *Cross* lends no support to Solito's argument. There, the court found a jury triable issue on knowledge when surveillance footage showed a customer brought a leaky fluid container to the checkout clerk, someone retrieved an unbroken container for the customer, and almost nineteen minutes later, plaintiff slipped and fell. *Cross*, 2018 WL 3949749, at *4. After the fall, an employee told plaintiff the substance was dish soap and that a customer earlier spilled it in the back of the store "but it may have spilled up here." *Id.* at *2. There is no such evidence here. Absent evidence that the person in red said something about a spill and that the person in the yellow vest was an employee, a jury would have to guess to conclude Sam's East had actual knowledge of the spill.

## B.    Constructive Knowledge

Sam's East also says the absence of evidence showing its constructive knowledge warrants summary judgment. (Dkt. 23-1.) Pointing to the surveillance footage and its employee's declaration, it says it lacked constructive knowledge because, among other reasons, no evidence shows the "spill could have been easily seen and removed by an employee." (*Id.* at 17.) Solito argues Sam's East lacked a reasonable

inspection program and the spill was easy to see, suggesting Sam's East failed to implement the program. (Dkt. 29 at 15–18.)

To establish constructive knowledge, Solito must show (1) "a [Sam's East] employee was in the immediate area of the hazard and could have easily seen the substance" or (2) the "hazard remined on the floor long enough that ordinary diligence by the [Sam's East] employee should have discovered it" through reasonable inspection procedures. *Brown v. Host/Taco Joint Venture*, 699 S.E.2d 439, 442 (Ga. Ct. App. 2010).

### 1.    Employee Positioned in the Immediate Vicinity with Means to Discover

The Court finds Solito cannot establish constructive knowledge under the first prong. While the undisputed video footage shows an employee walking past the area of the incident a minute beforehand, nothing in the footage shows the employee stayed in that area at the time Solito fell. And Solito never deposed Sam's East or otherwise sought testimony from the employees about their location. Perhaps sensing this deficiency, Solito takes a similar tack as before, arguing Billingsley's behavior at the time of the fall presents a jury triable issue. (Dkt. 29 at 19–20.) Posing many rhetorical questions about what the evidence *could* (but doesn't) show, Solito posits Billingsley must be an employee

because she cleaned up the spill after the fall. (*Id.*) Solito presents nothing to support this statement, legally or factually. She further asks "[w]as Billingsley through Crossmark under an agreement to follow guidelines of [Sam's East]?" (*Id.* at 19.) She should have answered this question and the others in discovery. Indeed, while Solito testified Billingsley, the supposed "cleaning lady," was in the area and spoke with her, Solito never mentioned anything else about their conversation, let alone her employment status. (Dkt. 26-1 at 35:13–19.) Solito's conjecture contrasts with Speck's plain testimony that Billingsley is an employee of Crossmark and "not . . . Sam's East." (Dkt. 23-1 at 45 ¶ 5.) So the Court rejects this cursory argument and finds this testimony does not present a factual dispute.

Additionally, contrary to Solito's argument, nothing about the extent of the post-incident cleaning suggests the size of the spill. (Dkt. 29 at 17–19 ("A reasonable jury can conclude the extent of the spill can be correlated to the extent of the cleaning of certain areas of the floor.").) The fact "[Sam's East employees] cleaned a broad area around the spot where [Solito] fell do[es] nothing to indicate what was in existence and visible *before* [Solito's] fall." *Parker v. Wal-Mart Stores E., LP*, 2018 WL

9437354, at *7 (N.D. Ga. Aug. 23, 2018) (emphasis added).  For all the Court knows, as Sam's East points out, its employees could have been ensuring the floor was "thoroughly cleaned."  (Dkt. 30 at 13.)  So Solito's argument proves unconvincing.

In all, Solito's unsupported assertions amount to sheer speculation. And "[s]peculation does not create a *genuine* issue of fact."  *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (emphasis in original).  Solito thus has failed to create a genuine issue of material fact under this prong.

### 2.    Reasonable Inspection

Under the second prong, constructive knowledge "may be inferred when there is evidence that the owner lacked a reasonable inspection procedure."  *Id.*  A defendant may disprove that it had constructive knowledge by showing "not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident."  *Id.*  Alternatively, a defendant may escape the inference that it had constructive knowledge if the evidence shows its employees could not have discovered the spill during a reasonable inspection.  *See Chastain v. CF Ga. N. DeKalb LP*, 569 S.E.2d 914, 916

(Ga. Ct. App. 2002) ("If there is no evidence that the [alleged hazard] could have been discovered during a reasonable inspection, then no inference arises that defendants' failure to discover the defect was the result of any alleged failure to inspect."); *Hopkins v. Kmart Corp.*, 502 S.E.2d 476, 479 (Ga. Ct. App. 1998) ("[I]n the absence of evidence that a reasonable inspection would have discovered the foreign substance, no inference can arise that defendant's failure to discover the defect was the result of its failure to inspect.").

Sam's East says many courts have determined inspection policies like its own are reasonable and the surveillance footage shows "continuous monitoring of the store" by its employees. (Dkt. 30 at 7–10.) Solito responds with meaningless distinctions about the reasonableness of the policy and argues Sam's East failed to follow its inspection procedure. (Dkt. 29 at 11–16.)

Putting aside the apparent reasonableness of Sam's East's inspection program, Sam's East faces one glaring issue: no evidence indicates its employees adhered to and conducted the inspection program at the time of the fall. While certainly not required to log inspections, there is no record evidence about when, if at all, an employee *inspected*

the area. Indeed, the only possible evidence—Speck's affidavit and the footage—falls far short of giving any specific information about the supposed inspections. For one, Speck testified the policies "were effective on the day of the subject incident." (Dkt. 23-1 at 47 ¶ 10.) Stating a policy was effective that day does not show how the employees *complied* with that requirement. *See Lundy v. Publix Super Mkts., Inc.*, 2022 WL 124553, at *4 (N.D. Ga. 2022 Jan. 13, 2022) (rejecting as evidence of compliance affidavits stating the area of the fall "'was inspected regularly' and all employees 'were in compliance' with the inspection policy"); *Davis v. Bruno's Supermarkets, Inc.*, 587 S.E.2d 279, 281 (Ga. Ct. App. 2003) (rejecting averments that merely explained the store followed its procedures on the day of the incident when the affiant never "show[ed] that he personally observed or conducted the inspection"); *Nealy v. Wal-Mart Stores E., LP*, 2021 WL 3398145, at *12 (N.D. Ga. Jan. 26, 2021) (rejecting as evidence of compliance affiant's averments that he conducted inspections the day of the incident when he never included specifics on when or how he inspected the area). Nor does Sam's East submit any testimony from its employees who allegedly inspected the area before the fall. What's more, the footage is equally unhelpful on this

front. Sam's East cites several moments in the footage to show its employees "continuous[ly] monitoring" the store. (Dkt. 30 at 10.) The policy, indeed, requires employees to conduct regular safety sweeps, inspecting and monitoring the store for hazards. And the cited footage—as Sam's East carefully phrased in its statement of material facts—shows employees "walking" past the area of the fall several times. (Dkt. 23-2 ¶ 30 ("In this case, an employee walked through the area of the subject incident" four times.).) Yet "walking" and "inspecting" are not coextensive terms, particularly when the undisputed footage shows the "walking" employees paying no attention to the ground or only glancing fleetingly. *Doudeau v. Target Corp.*, 572 F. App'x 970, 972 (11th Cir. 2014) (reversing grant of summary judgment when, among other things, the surveillance footage showed an employee's gaze was "not on the floor but instead customers"); *York v. Publix Super Mkts., Inc.*, 2024 WL 1355143, at *5 (N.D. Ga. Mar. 30, 2024) (rejecting a store's argument that it adhered to its "Don't Pass it Up, Pick it Up" by "walking through the area"). The footage, for example, shows that the last employee to pass the area before the fall was walking briskly before waving to Billingsley. Whether that employee looked at the floor is unclear, and certainly not

beyond factual dispute.  Because Sam's East has not shown it complied with its procedures before the fall, a factual dispute prevents summary judgment.[4]

Disagreeing and citing the *Chastain* principle—that constructive knowledge cannot be imposed on an owner if the spill would be unnoticeable during a reasonable inspection—Sam's East contends Solito's failure to provide evidence on the noticeability of the substance ends the analysis.  (Dkts. 23-1 at 17–18; 30 at 11–13.)  Solito responds with a litany of speculative arguments claiming a reasonable inspection would have uncovered it.  (Dkt. 29 at 17–18.)  Though a close call, the *Chastain* principle does not apply here.  The metaphorical *Chastain* hill is a tough one to climb.  Indeed, the Georgia Court of Appeals has

---

[4] In the light of this finding, the Court need not reach Sam's East's arguments about Solito's failure to show how long the substance remained on the ground.  *See Tolbert v. Publix Super Mkts., Inc.*, 634 F. Supp. 3d 1319, 1325 (N.D. Ga. 2022) ("[T]he plaintiff need not show how long the hazard was present in the area unless the owner has demonstrated that its inspection procedures were followed.").  Nor must the Court address Sam's East's argument that an eleven-minute timeframe constitutes a legally insufficient period for discovery since Sam's East first raised the issue in its reply.  *United States v. Coy*, 19 F.3d 629, 632 n.7 (11th Cir. 1994) ("Arguments raised for the first time in a reply brief are not properly before a reviewing court.").

explained that the *Chastain* principle does not reach terribly far, in part because even a plaintiff's admissions about the visibility of a hazard are still construed in her favor. *See Donastorg v. Rainbow USA, Inc.*, 802 S.E.2d 425, 429 (Ga. Ct. App. 2017) (en banc) (narrowing the *Chastain* principle to situations when plaintiff shows "no causal connection between plaintiff's injury and any alleged inaction by defendants as a matter of law"). As a result, a plaintiff's admissions must be exceedingly strong to warrant summary judgment on the "undiscoverability" of a spill. In *Chastain*, for instance, the plaintiff's wife—the only witness to offer testimony on the subject—said the clear substance on the ground was only noticeable after she "got down" to see what happened to her husband. *Id.* at 803–04.

This case is very different. First, Solito is right: she never testified about "a conclusion on the obviousness or visibility of the spill." (Dkt. 29 at 22.) At Solito's deposition, the following colloquy occurred:

> Q: When you eventually stood up, were you able to see the oil on the floor?
> A: No, I didn't notice because the manager and another man were the ones that came and got me up.
> Q: Okay. So you don't know whether or not the substance was visible from a standing position?
> A: No, I didn't look, to be honest with you.

(Dkt. 24-1 at 35:4–10.)  This answer does not indicate the spill was invisible, only that Solito never looked.  The Court thus cannot say this testimony "equates to an admission that even an employee . . . would not have been able to see and identify the hazard." *Donastorg*, 802 S.E.2d at 430.  And, contrary to Sam's East's conclusory string cite of decisions, Solito's ambiguous answer alone distinguishes those decisions.  *See Brown*, 699 S.E.2d at 443 (noting plaintiff acknowledged that the substance "was not initially 'easily visible'"); *Bolton v. Wal Mart Stores, Inc.*, 570 S.E.2d 643, 645 (Ga. Ct. App. 2002) (granting summary judgment when, among other things, plaintiff admitted "[b]etween the lights and the color of that floor where it was at, I would have never seen it in a million years") (alteration in original); *Lindsey v. Ga. Bldg. Auth.*, 509 S.E.2d 749, 750 (Ga. Ct. App. 1998) (granting summary judgment when plaintiff admitted the hazard "was extremely difficult to see").

A host of circumstantial evidence also creates a factual dispute about whether the substance was visible—a matter typically reserved for a jury. *Kroger Co. v. Schoenhoff*, 751 S.E.2d 438, 441 (Ga. Ct. App. 2013) ("[A]s we have explained on numerous occasions, '[t]he existence of constructive knowledge is a matter for the jury when there is evidence

from which it may be inferred.'").  To begin, Solito testified there was "a lot" of oil "spread out" (as opposed to a smaller "puddle") on the ground. (Dkt. 26-1 at 34:14–16.)  A jury could find the diffuse extent of the oil would have alerted a careful inspector.  A jury could also conclude the spill was easily noticeable because the video shows (1) the person in pink marking off an area while standing nearby and (2) other customers pointing to the ground while standing some distance from the spot where Solito fell.  In response, Sam's East's insists patrons obstructed the view of any possible inspector.  (*See, e.g.*, Dkts. 23-1 at 16 (noting an employee's "view was clearly blocked by other patrons in the area"), 17 (observing "Plaintiff confirms that the patrons in the area blocked the view of the spill").)  Not quite.  Though the group of four people were in the area, the footage shows Solito walked behind the group and fell on the substance some distance away from them, suggesting spillage beyond the group.  A jury must decide between these competing inferences, and the Court denies summary judgment on Solito's claim for premises liability.

## C. Negligence Per Se & Negligent Training and Supervision

Sam's East says the statute Solito cites cannot support her negligence per se claim and nothing in the record supports her negligent training and supervision claim. (Dkt. 23-1 at 20–23.) These additional reasons—in addition to abandonment—also warrant summary judgment. First, Solito, as she tries here, cannot assert negligence per se under O.C.G.A. § 51-3-1. *See Sanders v. QuikTrip Corp.*, 378 F. Supp. 3d 1177, 1194 (N.D. Ga. 2019) ("[O.C.G.A. § 51-3-1] cannot support a claim for negligence per se."). Second, no evidence approaches that required for a negligent supervision and training claim. There is no "evidence of incidents similar to the behavior that was the cause of [Solito's] injury"—and "[i]n order to defeat summary judgment on a claim for negligent training and supervision, a plaintiff must produce [such] evidence." *Doe I v. Young Women's Christian Ass'n of Greater Atlanta, Inc.*, 740 S.E.2d 453, 456 (Ga. Ct. App. 2013); *see also Novare Grp., Inc. v. Sarif*, 718 S.E.2d 304, 309 (Ga. 2011) ("For an employer to be held liable for negligent supervision, there must be sufficient evidence to establish that the employer reasonably knew or should have known of an

employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff.").

## V.    Conclusion

The Court **GRANTS IN PART** and **DENIES IN PART** Sam's East's Motion for Summary Judgment.    (Dkt. 23.)    Solito's premises liability claim may proceed.

**SO ORDERED** this 31st day of March, 2025.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE