IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Argelia Solito,

        Plaintiff,

v.                                           Case No. 1:23-cv-3438-MLB

Sam's East Inc.,

        Defendant.

_____/

## ORDER

This is a slip-and-fall case. Defendant moved for summary judgment on all claims. (Dkt. 23.) The Court granted in part and denied in part the motion. (Dkt. 33.) Defendant now moves for reconsideration. (Dkt. 34.) Plaintiff opposes. (Dkt. 35.) The Court denies the motion.[1]

---

[1] The Court assumes the reader is familiar with the background of this case. The Court also notes his Order cites several unpublished cases that are not binding. The Court cites them nevertheless as instructive. *See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive.").

I.  **Legal Standard**

Parties may move for reconsideration of orders only if "absolutely necessary." LR 7.2(E), NDGa. Defendant doesn't cite any rule permitting reconsideration. (Dkt. 34 at 3.) But because it asks the Court to revisit an order resolving "fewer than all claims or the rights and liabilities of fewer than all parties," the Court construes it as arising under Rule 54. *See* Fed. R. Civ. P. 54(b); *Buress v. City of Mia.*, 2025 WL 1231951 (S.D. Fla. Apr. 29, 2025) (applying Rule 54(b)'s reconsideration standard to order denying summary judgment). Under Rule 54(b), courts may revise nonfinal orders at "any time before the entry of" final judgment. Fed. R. Civ. P. 54(b). Courts wield "considerable discretion" when entertaining such motions, "considering both the weight of the moving party's arguments and the disruption that a change would cause in light of the time that has passed since the decision was initially made." *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1381 (11th Cir. 2024). But "in most instances district courts should hesitate before revisiting their earlier interlocutory orders." *Id.* at 1380.

## II. Discussion

At summary judgment, Defendant argued, among other things, it lacked actual and constructive knowledge that the unidentified substance was on its floor, warranting judgment on Plaintiff's premises liability claim. (Dkt. 23-1 at 14–20.) After Plaintiff responded, Defendant filed a reply brief and attacked all Plaintiff's points. (Dkt. 30.) In a separate subsection on constructive knowledge, Defendant cited a litany of cases and argued the length of time the substance was on the floor—allegedly eleven minutes—was "a legally insufficient time for a hazard to be identified and removed." (*Id.* at 11–12.)

The Court, finding a genuine issue of material fact, held Defendant hadn't "shown it complied with its procedures before the fall." (*Id.* at 22.) In a footnote, the Court observed:

> In the light of this finding, the Court need not reach [Defendant's] arguments about [Plaintiff's] failure to show how long the substance remained on the ground. *See Tolbert v. Publix Super Mkts., Inc.*, 634 F. Supp. 3d 1319, 1325 (N.D. Ga. 2022) ("[T]he plaintiff need not show how long the hazard was present in the area unless the owner has demonstrated that its inspection procedures were followed."). Nor must the Court address [Defendant's] argument that an eleven-minute timeframe constitutes a legally insufficient period for discovery since [Defendant] first raised the issue in its reply.

(Dkt. 33 at 22 n.4.)

3

Now, Defendant says the Court erred by finding it failed to raise timely its so-called "eleven-minute" argument. (Dkt. 34 at 2.) Such argument, according to Defendant, doesn't "rely on a new theory or an undisclosed fact" because its initial brief "repeatedly referenced the temporal relationship between the spill and Plaintiff's fall," directly responded to Plaintiff's arguments, and simply "expanded upon the constructive knowledge arguments made in its initial motion. (*Id.* at 33–34.) Conceding Defendant raised the fact the substance remained on the floor for allegedly eleven minutes, Plaintiff says Defendant made no mention of any such *legal argument* in its initial brief, she never raised the issue in her response brief, and Defendant improperly tried to "fashion a brand[] new argument" from a fact on which it never placed "legal significance." (Dkt. 35 at 4–8.) Plaintiff is right.

Courts don't consider new arguments raised for the first time in replies. *See United States v. Coy*, 19 F.3d 629, 632 n.7 (11th Cir. 1994) ("Arguments raised for the first time in a reply brief are not properly before a reviewing court."); *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing

4

court." (alterations and internal quotation marks omitted)).  This rule serves important ends, like giving litigants an opportunity to challenge the argument, preventing the Court from being "forced to perform a litigant's research for it on a key legal issue," and eliminating the "tactical advantage" gained by a party "sav[ing] his best argument for his reply."  *Hardy v. Jim Walter Homes, Inc.*, 2008 WL 906455, at *8 (S.D. Ala. Apr. 1, 2008).  Disputes, as here, typically center on whether an argument is "new."  If, for instance, a party responds directly to an opposing party's new issue, parties can—and should—reply in kind. *Brown v. MUY Pizza-Tejas, LLC*, 2024 WL 3491659, at *5 (N.D. Ga. July 18, 2024) ("That proposition does not, however, prevent a reply brief from addressing arguments first raised in the opposing brief. That's what a good reply brief *should* do." (emphasis in original)).

The Court properly disregarded the argument for two reasons. First, Defendant inadequately raised this argument in its initial motion. In the opening brief, Defendant made several fleeting references to an eleven-minute time between when the liquid allegedly spilled and when Plaintiff fell.  (*See* Dkt. 23-1 at 2 (introduction), 16–17 (citing law on the substance's visibility and noting "the surveillance footage shows that the

5

shopping cart containing the leaking package of chaffing fuel entered the area where Plaintiff fell . . . —less than eleven minutes before Plaintiff fell"), 19 ("The undisputed evidence in the record shows that the fuel was spilled from another customer's shopping cart a mere eleven minutes prior to Plaintiff's fall."). Still, it made no *legal* argument about the relevance or importance of that fact. Not with any particularity to that narrow issue, anyway. These cursory references to a fact, without explaining its legal relevancy, aren't enough to put that issue into play here. *Whitten v. SSA, Comm'r*, 778 F. App'x 791, 793 (11th Cir. 2019) ("For an issue to be adequately raised in the opening brief, it must be plainly and prominently raised and must be supported by arguments and citations to the record and to relevant authority."); *Islam v. Sec'y, Dep't of Homeland Sec.*, 997 F.3d 1333, 1343 (11th Cir. 2021) (finding a party waived a claim by making "fleeting references" to it in the initial brief without citing any supporting authority). And the Court faced no obligation to ferret out the argument for Defendant. *Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) ("To prevail on a particular theory of liability, a party must present that argument to the district court. Our adversarial system requires it; district courts cannot

concoct or resurrect arguments neither made nor advanced by the parties." (in-text citation omitted)). So the Court finds Defendant failed to raise the issue in its initial brief.[2]

Second, because Plaintiff never raised the legal sufficiency of the time the spillage remained on the floor, Defendant couldn't inject that issue in its reply. (Dkt. 34 at 8–10.) Careful attention to the arguments presented belies Defendant's insistence that it simply "direct[ly] respon[ded]" to Plaintiff's arguments. At summary judgment, Plaintiff had to show Defendant had "actual or constructive knowledge of the hazard" to survive summary judgment. *Robinson v. Kroger Co.*, 493

---

[2] Defendant also makes several other unpersuasive arguments on this issue. First, Defendant says it "clearly and repeatedly made the timing of the spill and its significance under Georgia constructive knowledge law a key part of its initial argument." (Dkt. 34 at 6.) This characterization is not only inaccurate but at far too high a level of generality. In its present motion, Defendant supports that assertion with only general principles about constructive knowledge it cited in its motion for summary judgment (specifically, whether a substance was detectable) without regard to its initial, clear theory—the substance was undetectable *because* of its (in)visible qualities. (*Id.* at 6–7.) Second, disputing the visibility-timing distinction drawn above, Defendant says "these concepts are inseparable under Georgia law." (Dkt. 36 at 4.) That doesn't really matter. Instead, what matters is which theory Defendant asserted, even if the argument related to the same element of a claim. So these arguments fail.

S.E.2d 403, 414 (Ga. 1997). To show constructive knowledge, Georgia law requires one to show (1) "a [Defendant's] employee was in the immediate area of the hazard and could have easily seen the substance" or (2) the "hazard remained on the floor long enough that ordinary diligence by the [Defendant's] employee should have discovered it" through reasonable inspection procedures. *Brown v. Host/Taco Joint Venture*, 699 S.E.2d 439, 442 (Ga. Ct. App. 2010).

Attacking the first prong of constructive knowledge, Defendant argued no record evidence suggested "that the spill could have been easily seen and removed by an employee." (Dkt. 23-1 at 17.) It hung its hat on the absence of evidence that an employee could notice the substance *because* of its *character* (the size, color, and shape of the spillage) and *location* (underneath the customers). (*Id.* at 16–18 (summarizing evidence on the substance's qualities and citing cases for principles related to the visibility of the substance)). In response to these arguments, Plaintiff, in relevant part, cited Defendant's reference to the eleven-minute timeframe in a disorganized paragraph summarizing evidence. (Dkt. 29 at 10.) She responded, "the surveillance footage provided by Defendant lacks the clarity to see any leaking from the

8

package of chaffing fuel," and "if the package was leaking, there remains the question as to when the leaking started." (*Id.*) That's it. No citations to cases. And certainly nothing suggesting the purported eleven-minute timeframe was legally *sufficient*. She then rounded out her constructive knowledge points by countering Defendant's arguments about the visibility of the spillage and claiming Defendant uses an unreasonable inspection program (or failed to follow a reasonable one). (*Id.* at 15–18.)

Yet in reply, Defendant upped the ante. Rather than just opposing Plaintiff's arguments about the reasonableness of its inspection procedures or whether it followed them, Defendant threw a new principle into the mix: the substance—no matter its appearance, its location, or the inspection program's details—was undetectable as a matter of law *because* it remained on the floor too short a time to discover it. (Dkt. 30 at 11–12.) Too little too late. *Bennett v. Bascom*, 788 F. App'x 318, 323 (6th Cir. 2019) ("[R]eply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration."). This new issue should've been raised alongside Defendant's original theory that no one could discover the substance because of its appearance or location. To

9

hold otherwise would incentivize litigants to save perhaps *dispositive* arguments until the final brief in a *dispositive* motion, raising serious procedural fairness concerns. So Defendant improperly injected this issue into its reply.[3]

In any event, even if Defendant were right, the error is harmless because the Court would still deny summary judgment on the claim. Under the second constructive knowledge prong, Defendant had to show "not only that it had a reasonable inspection policy in place, but that such program was actually carried out at the time of the incident." *Lundy v. Publix Super Mkts., Inc.*, 2022 WL 124553, at *3 (N.D. Ga. Jan. 13, 2022). Otherwise Plaintiff benefits from an inference of constructive knowledge. *Davis v. Variety Wholesalers, Inc.*, 2020 WL 10574741, at *3 (N.D. Ga.

---

[3] The Court also rejects Defendant's characterization of the eleven-minute argument as it simply "expand[ing]" upon its earlier argument. (Dkt. 34 at 6.) It says this case is analogous to *Miller v. City of Atlanta*, 2022 WL 4587848, at *4 (N.D. Ga. Sep. 29, 2022). But Defendant's semantic gymnastics and supportive case have no force. Indeed, the Court struggles to see how that case gives Defendant any aid on anything beyond some abstract point. *Miller* involved a clearly responsive argument: a defendant argued the plaintiffs "did not supply any authority for their contention," and the "[p]laintiffs replied . . . by supplying more case law supporting the points raised in their opening brief. *Id.* Yet here, Defendant addressed Plaintiff's arguments but then added *another* layer to an argument.

Jan. 22, 2020) (noting "[c]onstructive knowledge may be inferred when there is evidence that the owner lacked a reasonable inspection procedure."). Because Defendant did not show it followed its inspection program (Dkt. 33 at 18–22), a factual dispute existed on Defendant's constructive knowledge. And Plaintiff needn't have shown how long the substance was on the floor. *Fairview Park, Ltd. P'ship v. Roddenberry*, 874 S.E.2d 408, 411 (Ga. Ct. App. 2022) ("[I]n order to withstand a motion for summary judgment, a plaintiff need not show how long a substance has been on the floor unless the defendant has established that reasonable inspection procedures were in place and followed at the time of the incident.").

Defendant, however, cites several cases holding the inference of constructive knowledge disappears when the substance is on the floor for a legally insufficient period. (*See* Dkt. 30 at 11–12.) That eleven-minute period, according to Defendant, falls comfortably within the legally insufficient period of time between spillage and the fall. (*Id.*) Those cases, however, share a common thread noticeably absent in this case: undisputed evidence establishing how long the substance was on the floor. *See, e.g.*, *Pickering Corp. v. Goodwin*, 534 S.E.2d 518, 519 (Ga. Ct.

11

App. 2000) (affirming summary judgment for defendant because an employee testified "he saw [someone] . . . spill water in" an area, he "immediately went to the telephone and called [] security to tell them of the hazard," and, as soon as he hung up, saw plaintiff fall on the water); *All Am. Quality Foods, Inc. v. Smith*, 797 S.E.2d 259, 261–62 (Ga. Ct. App. 2017) (affirming summary judgment since it failed "to see how the inspection policy is relevant to [plaintiff's] claim because in this somewhat unusual case, the video evidence establishes how long the substance was on the floor before [plaintiff] fell"); *Mazur v. Food Giant, Inc.*, 359 S.E.2d 178, 179 (Ga. Ct. App. 1987) (affirming summary judgment for lack of constructive knowledge because "the direct and undisputed testimony of defendant's employees established the floor was free of debris some ten to fifteen minutes prior to the fall"); *Johnson v. Autozone, Inc.*, 465 S.E.2d 463, 466 (Ga. Ct. App. 1995) (affirming summary judgment because defendant "produced the affidavit of an employee who stated that 15 to 20 minutes prior to [plaintiff's] fall he was working in the parking lot, could have seen the oil from where he was working, but did not see any oil on the ground at that time").

Here, as Plaintiff correctly argued (Dkt. 29 at 10), the cited evidence never put the issue beyond dispute. Defendant cited the affidavit of its General Manager, Cody Speck, to suggest spillage came from an item in an unknown customer's shopping cart. (Dkt. 23-2 ¶ 21 (Defendant's statement of material facts).) Speck testified that he "look[ed] around the scene for the source of the spill" once he arrived, "suspected that a package" of fuel "had leaked onto the floor from another customer's shopping cart," and "confirmed" his suspicion by watching the footage. (Dkt. 23-1 ¶¶ 6–7.)[4] But these conclusory, speculative statements—devoid of any meaningful explanation about why he "suspected" the spillage's source was some item in the cart (*i.e.*, touched the fluid, saw the fluid dripping from the cart)—do not support that fact. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value."); *James v. City of Montgomery*, 823 F. App'x 728, 731 (11th Cir. 2020) (Conclusory allegations in

---

[4] To be clear, the surveillance footage hardly shows Speck looking "around the scene for the source of the spill." Rather, it shows he twice glanced in the direction of the carts for seven total seconds. (Dkt. 25 (8/5/2021 Video) at 12:25:58 PM–12:26:06 PM.)

13

affidavits "have no probative value unless supported by specific facts."). Digging deeper, a jury could (perhaps easily) find Speck's supposed "confirm[ation]" of his suspicion unfounded in the light of the blurry surveillance footage.  At most, the footage showed that before the fall a customer pointed to a shopping cart closest to the display, prompting a customer in red to look at something in the cart, pull a rectangular package from the cart, and look downward at the floor for several seconds.  (*See* Dkt. 33 at 5.)  Because no part of the footage even shows the substance (before or after the fall), and because the footage merely shows ambiguous behavior from unknown customers, a jury could easily find Speck's confidence unsupported.  So no clear, non-conclusory evidence establishes how long the substance was on the floor. Defendant's argument thus fails.  *Nishijima v. Walmart Inc.*, 2024 WL 5516360, at *5 (N.D. Ga. Dec. 17, 2024) (refusing to apply this principle because defendant never produced plain evidence on how long a substance was on the floor).

In all, the Court rejects Defendant's arguments and stands by its Order.  To the extent Defendant has shown any error, it's harmless.

### III. Conclusion

The Court **DENIES** Defendant's motion. (Dkt. 34.) Since the parties earlier noted "[a] possibility of settlement after discovery" (Dkt. 7 at 10), the Court also **ORDERS** this case to mediation. The parties may retain a private mediator at their own expense. Or they may ask the Court to appoint a Magistrate Judge to conduct the mediation. The parties are not required to pay for mediation by a Magistrate Judge. The parties must advise the Court of their mediation preference no later than 21 days after the entry date of this Order.

If the parties elect to retain their own mediator, they shall identify the mediator no later than 35 days after the entry date of this Order. Mediation must occur within 90 days after the entry date of this Order. The parties must have present at the mediation a person with authority to settle this litigation. The parties shall file a report on the outcome of their mediation no later than 7 days after the mediation concludes.

The Court **STAYS** this case pending mediation. The Court **DIRECTS** the Clerk to **ADMINISTRATIVELY CLOSE** this case during the period of the stay.

**SO ORDERED** this 18th day of December, 2025.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

16